

**IT IS ORDERED as set forth below:**

**Date: June 15, 2026**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

IN RE:

ALLSTAR PROPERTIES, LLC, et. al.,

Debtors.

CASE NO. 25-41314-BEM

CHAPTER 11

Jointly Administered

**<u>ORDER</u>**

These jointly administered cases came before the Court on April 15, 2026, on

AllStar Properties I, LLC's ("Debtor") *Motion For An Order Approving Sale of Real Estate*

*Located in Floyd County, Georgia (130 Broad St)* [Doc. 230] and *Motion For Order Approving*

*Rejection of Certain Non-Residential Real Property Lease Pursuant to 11 U.S.C. §365* [Doc. 231]

through which Debtor seeks an order approving the sale of certain real property located in Rome,

Georgia (the "Property") and rejection of one of three leases associated with the Property as Debtor

has determined that the affected lease (the "Lease") is under market. Debtor states that the

proposed purchaser of the Property does not wish to proceed with the purchase if the Lease is not

rejected. The buyer proposes to purchase the Property for $750,000 contingent on Court approval and rejection of the Lease. The proposed purchase price would provide for payment of the claim secured by the Property as well as approximately $300,000 to Debtor's estate. [Doc. 230].

Relevant to the issue before the Court, the lessee under the Lease, Edward D. Jones & Co. ("EDJ"), filed a *Limited Objection to (I) The Motion For An Order Approving Rejection of Certain Non-Residential Real Property Lease Pursuant to 11 U.S.C. §365 And (II) The Motion For An Order Approving Sale of Real Estate Located in Floyd County, Georgia (130 Broad St)* (the "Limited Objection"). [Doc. 257]. EDJ argues in the Limited Objection that the proposed rejection impairs its rights under § 365(h) of the Bankruptcy Code (the "Code") because it does not preserve its rights to treat the Lease as terminated or retain possession of the leased property for the remainder of the lease term and for any extensions provided therein[1] with rights to offset against rent for damages caused by Debtor's nonperformance under the Lease. EDJ proposes that Debtor include the following language in an order approving the sale:

> Nothing in this Order shall be construed to impair, diminish, or otherwise affect Edward Jones's right to elect, pursuant to 11 U.S.C. § 365(h)(1)(A)(ii), to retain its rights under the Lease for the balance of the term of the Lease, including any renewal or extension periods to the extent such rights are enforceable under applicable nonbankruptcy law. Edward Jones's election to retain its rights under the Lease shall not be conditioned upon, or subject to, any deadline, notice requirement, or other procedural limitation not expressly set forth in the Bankruptcy Code or applicable nonbankruptcy law.
>
> If Edward Jones elects to retain its rights under the Lease pursuant to 11 U.S.C. § 365(h)(1)(A)(ii), such retained rights shall include, without limitation, all rights relating to: (1) the amount and timing of payment of rent and other amounts payable by Edward Jones under the Lease; (2) the right of use and possession of the real property that is the subject of the Lease; (3) the right to quiet enjoyment of such real property; (4) any right of subletting, assignment, or hypothecation, (5) all rights of offset under 11 U.S.C. § 365(h)(1)(B) and (6) all other rights that are in or appurtenant to the real property for the balance of the term of the Lease and for any

---

[1] EDJ included a copy of the Lease with its Limited Objection. The Lease began in 2005 and does not expire until July 31, 2028, with an option to renew. The Lease has been renewed four times. The Lease also contains a right to terminate with 60 days' notice and payment of two months' rent.

2

renewal or extension thereof, to the extent such rights are enforceable under applicable nonbankruptcy law.

Any transfer of the real property that is the subject of the Lease pursuant to this Order shall be expressly subject to and burdened by Edward Jones's retained rights under 11 U.S.C. § 365(h)(1)(A)(ii). The purchaser or any successor or assign of the purchaser shall take title to the real property subject to the Lease and Edward Jones's retained rights hereunder and shall be bound by the Lease to the extent necessary to effectuate Edward Jones's retained rights. No provision of this Order authorizing a sale "free and clear" of liens, claims, encumbrances, or interests pursuant to 11 U.S.C. § 363(f) or any other provision of the Bankruptcy Code shall be deemed to extinguish, impair, or otherwise affect Edward Jones's possessory or other rights under the Lease as protected by 11 U.S.C. § 365(h)(1)(A).

Nothing in this Order shall be construed to deprive Edward Jones of its alternative right, pursuant to 11 U.S.C. § 365(h)(1)(A)(i), to treat the Lease as terminated by reason of the rejection, if such rejection amounts to a breach that would entitle Edward Jones to treat the Lease as terminated by virtue of the terms of the Lease, applicable nonbankruptcy law, or any agreement made by Edward Jones.

[Doc. 257].

Debtor objects to this proposed language because it does not include a deadline for EDJ to choose whether to treat the Lease as terminated or retain possession. EDJ does not object to the rejection or the sale, rather it objects to the proposed sale order because it asserts that the order eliminates its rights under § 365(h). The parties filed briefs, and the Court heard oral argument on May 19, 2026. What procedures apply under § 365(h) and whether a temporal limitation may be imposed appears to be a matter of first impression as neither the Court nor the parties located any authority on the issue. After considering the briefs, oral argument, the statutory language of § 365 and relevant case law, the Court concludes that the nonbankruptcy law of contracts applies in the application of § 365(h) and provides for a decision at the time of rejection. The Court concludes further that it can provide EDJ with a reasonable extension in which to decide whether to retain its rights under the Lease or treat rejection as termination.

3

**Contentions of the Parties**

Debtor argues that § 365(h) requires a tenant to choose between two inconsistent remedies at the time of rejection and that the issue before the Court is limited to when a lessee must exercise its rights under § 365(h). In support of this position Debtor argues that the text of the statute does not support EDJ's position because the Code provides a binary choice to lessees, terminate or retain rights under the Lease, and is written in the present tense meaning that upon rejection by the debtor-lessor an election must be made. In addition, election-of-remedies principles, waiver, and the need for finality in bankruptcy administration support requiring a timely election by a tenant. Debtor argues that finality is particularly important here as the purchaser will not go forward with the purchase without a date certain for EDJ's election and would thereby injure the estate because the property has been marketed for a significant period and the sale will fall through if there is not a time limit for EDJ's election. In addition, the little authority that exists indicates that remaining in possession amounts to a waiver of the option to terminate, which is consistent with non-bankruptcy law. Finally, Debtor argues the Court has authority under § 105(a) to impose a reasonable time limit for EDJ to make its election.

In contrast, EDJ argues that the Court should reject Debtor's position because all it seeks is the preservation of its rights under § 365(h), which Congress made clear does not contain a deadline. EDJ argues that Congress can and did put many deadlines in § 365 making it clear that there is no deadline and that § 105 does not provide the Court authority to do what the Code does not allow by imposing a deadline. EDJ further argues that the legislative history of the section supports its reading of § 365(h) such that Debtor's request contradicts fundamental principles of statutory construction. EDJ disagrees with Debtor's assertion that the alternatives under § 365(h) are binary, amount to an election of remedies, and can be waived. Rather, EDJ asserts that

4

Congress balanced the rights of debtors and tenants in § 365 which its reading implements because if the new landlord (buyer) fails to maintain the rental property to such a degree that the rent offset of § 365(h)(2)(ii) is insufficient to remedy the deterioration, then a tenant retains its right to terminate. EDJ argues further that there is no prejudice to the estate or the new landlord as EDJ will continue to pay rent under the Lease. Nor does remaining in possession and continuing to pay rent amount to a waiver because rejection is not tantamount to termination such that a lessee can continue to abide by lease terms during the bankruptcy and not have its legal rights extinguished. Finally, EDJ argues that a buyer's preference and an increased sales price cannot override its statutory rights which merely allow a tenant to continue in place while preserving its right to terminate should the nonperformance by the new landlord exceed the tenant's right to offset rent.

**Analysis**

The issue before the Court is one of statutory construction so the Court "begin[s] with the words of the statue." *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1146 (11th Cir. 2018) (citing *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 (1992) (internal citations and quotations omitted); *see also United States v. Silva*, 443 F.3d 795, 798 (11th Cir. 2006) ("If the statute's meaning is plain and unambiguous, there is no need for further inquiry.") (internal quotation marks and citation omitted). Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (citations omitted).

5

In determining whether language is unambiguous, we "give undefined terms their plain, ordinary, and most natural meaning." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995). A provision is ambiguous only where the disputed language is "susceptible to more than one reasonable interpretation." *Med. Transp. Mgmt. Corp. v. Comm'r of I.R.S.*, 506 F.3d 1364, 1368 (11th Cir. 2007). "Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. 528, 537, 135 S. Ct. 1074, 1081-82 (2015) (internal quotation marks and citation omitted). The Court also considers "the specific context in which that language is used, and the broader context of the statute as a whole." *Id.*

Section 365(h) states as follows:

(h)(1)(A) If the trustee rejects an unexpired lease of real property under which debtor is the lessor and—

(i) if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or

(ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment subletting, assignment, or hypothecation) that are in or appurtenant to the real property of the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law

(B) If the lessee retains it rights under subparagraph (A)(ii), the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

11 U.S.C. § 365(h).

6

Here, the parties' disagreement is whether subpart (i) is mutually exclusive of subparts (ii) and (B). In so arguing EDJ relies on the several time limits Congress expressly put into § 365, the balance of rights between the parties in the section, and whether termination is mutually exclusive of retention of rights under a lease. This causes the Court to consider first, the meaning of the words "terminated" and "retain" to decide if the ordinary meaning of these words supports Debtor's argument that EDJ has a binary choice.

"Terminate" is defined as "to form an ending", "to come to an end in time", and "to extend only to a limit (such as a point or line)" by Merriam Webster[2] and as "[t]o bring to an end, put an end, cause to cease" by the Oxford English Dictionary.[3] "Retain" is defined as "to keep in possession or use", and "to hold secure or intact" by Merriam Webster[4] and "[t]o keep in one's own hands or under one's own control" by the Oxford English Dictionary.[5] The ordinary meaning of these words contemplates an ending or a relinquishing (terminate) and keeping (retain). In the ordinary sense, these terms seem to be diametrically opposed. However, given that termination contemplates an end but not a time frame, it seems that the words can coexist such that their ordinary meaning does not resolve the issue here – is there a time period in which a tenant must elect to end the lease and treat the lease as terminated or remain in possession. That being the case, the Court will turn to the broader context of § 365 as a whole.

A review of the entirety of the provisions for assumption or rejection of executory contracts and unexpired leases reflects a balance between the rights of the counterparties to the agreements in that the Code requires performance by both after the petition date and allows the non-debtor party to insist on a date certain for assumption or rejection in chapter 11 while allowing

---

[2] https://www.merriam-webster.com/dictionary/terminated (last visited on June 5, 2026).
[3] https://www.oed.com/dictionary/terminate_v?tab=meaning_and_use#18958128 (last visited on June 5, 2026).
[4] https://www.merriam-webster.com/dictionary/retain (last visited on June 5, 2026).
[5] https://www.oed.com/dictionary/retain_v?tab=meaning_and_use#25737679 (last visited on June 5, 2026).

the debtor additional time for such a decision should there be cause therefore, as long as the debtor is performing under the agreement. 11 U.S.C. §365. Certainly, as EDJ argues there are many time limits in § 365; however, none are included in §§ 365(h), (i) or (n). This could be read as intentional, requiring a negative inference, as argued by EDJ. But the Supreme Court rejected that approach in deciding whether a debtor-licensor's rejection of a trademark licensing agreement terminates the licensee's right to use the trademark. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370; 139 S. Ct. 1652 (2019).

In that case, the debtor argued that because certain provisions of § 365 allow a counterparty to specific types of agreements to continue exercising their rights (i.e., § 365(h) for tenants and § 365(n) for certain intellectual property licensees), then a different rule must apply to other types of contracts. *Id.* at 374-74, 139 S. Ct. at 1659. The Court disagreed, rejecting the claim that "by specifically enabling the counterparties in some contracts to retain rights after rejection, Congress showed that it wanted the counterparties in all other contracts to lose their rights." *Id.* at 379, 139 S. Ct. at 1661. Instead, the general rule under § 365(g) applies such that a rejection constitutes a prepetition breach but does not terminate the contract. *Id.* at 381, 139 S. Ct. at 1662. The Court explained that the problem with the negative inference argument as applied to § 365 is that

> it treats as a neat, reticulated scheme of "narrowly tailored exception[s]," ... what history reveals to be anything but. Each of the provisions Tempnology highlights emerged at a different time, over a span of half a century. ... And each responded to a discrete problem—as often as not, correcting a judicial ruling of just the kind Tempnology urges.

*Id.* at 383-384; 139 S. Ct. at 1664 (citations omitted). That being said, the overall policy of § 365 is consistent with the overall structure of the Code in that it balances rights of debtors, secured creditors, and unsecured creditors in a way that seeks to preserve rights while preserving the ability

8

to reorganize. On this basis, the Court agrees with EDJ that the preservation of each parties' rights, the debtor's to reject and the tenant's to avoid damage above and beyond the offset of rent, supports this balance between the competing interests and is consistent with the policies underlying § 365 and the Code generally. However, the Court disagrees with EDJ's conclusion that it has an unlimited time to terminate after retaining rights under the Lease. Rather, the Code limits EDJ's right to the usual contract remedies for a material breach of the unexpired lease.

Section 365(g) provides that rejection does not terminate the agreement rather, it is a breach of the agreement. 11 U.S.C. § 365(g). In *Tempnology,* the Supreme Court held that rejection is a breach with the same consequences as a contract breach outside of bankruptcy. as follows:

> "[B]reach" [as used in § 365(g)] is neither a defined nor a specialized bankruptcy term. It means in the Code what it means in contract law outside of bankruptcy…. So the first place to go in divining the effects of rejection is to non-bankruptcy contract law, which can tell us the effects of breach.

587 U.S. at 379, 129 S. Ct. at 1661-62..

Thus, the Court looks to remedies for breach of contract underGeorgia law, which applies to the Lease. "Generally, one injured by a breach of a contract has the election to rescind or continue under the contract and recover damages for the breach. ... But to justify rescission, there must be a material nonperformance or breach by the opposing party. ... If the breach is not material, the party is limited to a claim for damages and cannot rescind the contract." *Forsyth Cnty. v. Waterscape Servs., LLC*, 303 Ga. App. 623, 633, 694 S.E.2d 102, 111 (2010) (cleaned up); *see also Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 819, 584 S.E.2d 41, 45 (2003) ("Forfeiture of a lease by acts of a party to a lease because of a breach of a covenant or condition [is] not favored, but where there is an express provision in the contract, termination or forfeiture of the lease will be permitted." (quotation marks and citations omitted).

9

Debtor and EDJ cite to *IDEA Boardwalk, LLC. v. Polo North Country Club, Inc. (In re Revel AC, Inc.*), 532 B.R. 216 (Bankr. D.N.J. 2015) (holding that a sale under §363(f) does not trump § 365(h) and the sale remains subject to tenants' rights under § 365(h)) in their briefs,[6] but for different reasons. EDJ points to the legislative history of the section and the congressional statement that a tenant "will not be deprived of his estate for the term for which he bargained," and argues that this shows "a Congressional intent to preserve certain limited rights of tenants" [Doc. 280 at 4] while Debtor points to the *Revel* court's statement about wavier under 362(h). [Doc. 278 at 5].

In *Revel*, the debtor owned real property that was leased to commercial tenants. The debtor proposed to reject the leases and sell the property, which the tenants opposed. The sale was approved subject to the tenants' rights under § 363(h), and the rejection of the leases was approved nunc pro tunc to the closing date. *IDEA Boardwalk, LLC v. Polo North Country Club, Inc., (In re Revel AC, Inc.),* AP No. 1401756, 2016 WL 6155903 at *3 (Bankr. D.N.J. 2016). As a result, the buyer "stepped into the shoes of the Debtors, and thus, ... is now treated as the landlord, with both the benefits and burdens of § 365." *Id.* at *6. The plaintiff filed a formal notice of its election to remain in possession of its leased premises. *Id.* at *3. Subsequently, the court considered the extent of the landlord and tenant's rights and obligations after the rejection and the election to retain possession of the leased property. *Id.* at *6-7. In so doing, the court stated that "the impact of the Debtors' rejection of the Lease, and [the plaintiff's] election to remain in possession is clear: by electing to remain in possession and assert its rights under § 365(h), [the plaintiff], in effect, waives the Debtors' breach of the Lease and opts instead to continue its relationship under the existing terms and conditions." *Id.* at *8 (citing *In re Flagstaff Realty Assocs.*, 60 F.3d 1031, 1034 (3d Cir.

---

[6] The Court found the subsequent order of the *Revel* Court, *IDEA Boardwalk, LLC v. Polo North Country Club, Inc., (In re Revel AC, Inc.),* AP No. 1401756, 2016 WL 6155903 (Bankr. D.N.J. 2016), useful in its analysis.

1995)). In other words, the tenant remains burdened with all its obligations. The debtor's rejection, on the other hand, means that the landlord only has to provide possession of the leased premises and the rights appurtenant thereto. *Id.* It need not comply with any other obligations under the lease and need not comply with the balance of the performance obligations under the lease "unless the failure to perform interferes with [the tenant's] possession, use and quiet enjoyment of the facilities[.]" which was required by the lease. *Id.*

*Revel* is clearly distinguishable as an election had been made and the tenants did not seek to retain the right to terminate the leases. Further, the Court need not turn to legislative history because the statutory text is unambiguous and, importantly, *Tempnology* answers the question before the Court. The teaching of *Tempnology* is clear, rejection is a breach which provides the usual contract remedies. Here that means EDJ has the rights it would have outside of bankruptcy if the Lease was breached. As noted by the Supreme Court in *Tempnology*, bankruptcy does not expand property or a debtor's rights therein. 587 U.S. 370, 381-82, 139 S. Ct. 1652, 1663. In parallel fashion, the Code does not expand a lessee's rights beyond the normal contract remedies. Thus, the Court concludes that although "terminate" and "retain" are not mutually exclusive terms, the definitions of "terminate" do include a reference to a limit or point in time indicating that the coexistence cannot be indefinite. This coupled with the fact that rejection is a breach which provides the point in time at which a tenant must make a decision to retain its rights or terminate a lease results in the conclusion that the time to elect is at rejection.

Alternatively, the Court agrees with Debtor's argument that retention can result in waiver of the right of termination, as it is consistent with nonbankruptcy law of contracts that applies to the Lease. Under Georgia law, "waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights. Specifically, acting on the theory

that the contract is still in force, as by continuing performance, demanding or urging further performance, or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach." *Yash Sols., LLC v. New York Glob. Consultants Corp.*, 352 Ga. App. 127, 133-34, 834 S.E.2d 126, 133 (2019) (internal quotation marks and citations omitted). Thus, waiver also applies after rejection and in the face of retention of rights, albeit creating questions of fact as to when the waiver arises.

EDJ argues that the buyer must price in EDJ's § 362(h) rights, which is true, but by the same token, EDJ must make an analysis of the value of its rights of offset versus its right to terminate when the breach occurs, all of which is consistent with nonbankruptcy law, the teaching of *Templnology*,. and the Code, which is an overlay to state law, in many instances such as presented in assumption and rejection. Indeed, all § 365(h) does is make express the law of contracts. The Court further concludes that imposition of a deadline for EDJ to elect to retain or terminate is unnecessary given that the decision is to be made at rejection but, that it is not inconsistent with § 365(h), § 105(a), and *Law v. Siegel*, 571 U.S. 415, 423, 134 S. Ct. 1188, 1195 (2014) ("a bankruptcy court's § 105(a) and inherent powers may not be exercised in contravention of the Code"), to provide EDJ a reasonable time to make that decision. Accordingly, it is now, hereby

ORDERED that EDJ shall determine whether to retain its rights under the Lease or treat the Lease as terminated within 45 days of the date of entry of this order; It is further

ORDERED that Debtor shall submit an order granting its *Motion For An Order Approving Sale of Real Estate Located in Floyd County, Georgia (130 Broad St)* [Doc. 230] that includes the statement that the sale is subject to § 365(h) as provided in this order; It is further

12

ORDERED that the *Motion For Order Approving Rejection of Certain Non-Residential Real Property Lease Pursuant to 11 U.S.C. §365* [Doc. 231] is GRANTED.

**END OF ORDER**

**Distribution List**

Anna Mari Humnicky
Small Herrin, LLP
100 Galleria Parkway
Suite 350
Atlanta, GA 30339

Mark Duedall
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
Suite 1500
3414 Peachtree Road, N.E.
Atlanta, GA 30326

Siena Berrios Gaddy
Baker Donelson Bearman Caldwell & Berkowitz, PC
3414 Peachtree Road NE
Suite 1500
Atlanta, GA 30326